## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DENISE RAY**                                                                          **CIVIL ACTION**

**VERSUS**

**NO. 20-237-JWD-RLB**

**ANDREW M. SAUL**
**COMMISSIONER OF SOCIAL SECURITY**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 25, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENIS RAY** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 20-237-SDD-RLB** |
| **ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY** | |

**REPORT AND RECOMMENDATION**

Denise Ray (Plaintiff) seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…").

Although instructed that it was unnecessary (R. Doc. 13 at 2), plaintiff filed a separate Motion for Summary Judgement (R. Doc. 17) with the memorandum in support of appeal. For the reasons given below, the Court **RECOMMENDS** that the Motion for Summary Judgment (R. Doc. 17) be **DENIED,** the decision of the Commissioner be **AFFIRMED,** and Plaintiff's appeal be **DISMISSED with prejudice**.

**I.   PROCEDURAL HISTORY**

Plaintiff filed her application for disability insurance benefits December 13, 2017, alleging that he became disabled on April 30, 2017.[1] (Tr. 139). Plaintiff's alleged disabling

---

[1] At the hearing before the ALJ Plaintiff amended the alleged onset date of disability to August 9, 2017. (Tr. 35, 38)

conditions include multilevel lumbar degenerative disc disease with spondylolisthesis, spinal instability at L4-5, degenerative arthritis of both knees, and attention deficit-hyperactivity disorder ("ADHD"). (Tr. 64, 165). Plaintiff's application for benefits was initially denied by the Social Security Administration on March 1, 2018. (Tr. 75). Thereafter, Plaintiff filed a written request for a hearing on April 30, 2018. (Tr. 83). An Administrative Law Judge ("ALJ") held a video hearing on May 16, 2019, (Tr. 33-62), after which he issued an unfavorable decision on June 20, 2019. (Tr. 16-26).

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. The medical evidenced established that Plaintiff suffers from degeneration and spondylosis at L4-5, degenerative arthritis of the bilateral knees, spondylosis of the thoracic spine, osteoarthritis, hypertension, obesity, bilateral carpal tunnel syndrome, and ADHD). (Tr. 18-19). The ALJ, however, concluded that the limitations caused by Plaintiff's bilateral carpal tunnel and ADHD are not severe and only minimally affects Plaintiff's ability to perform basic work activities. (Tr. 19). He further found that (1) Plaintiff's obesity does not meet or equal any medical listing and (2) Plaintiff's hypertension does not affect any body system to meet a medical listing. (Tr. 20). Additionally, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), and Plaintiff could sit, stand, or walk six hours each during an eight-hour workday. (Tr. 24). Considering Plaintiff's RFC, the ALJ concluded that Plaintiff is capable of performing past relevant work as cleaner/housekeeping (Tr. 21). Based on this finding, the ALJ concluded that Plaintiff was not disabled. (Tr. 26).

Plaintiff's request for review of the ALJ's decision (Tr. 129) was denied by the Appeals Council on February 12, 2020. (Tr. 1-4). The ALJ's decision rested as the Commissioner's final

decision when the Appeals Council denied Plaintiff's second request for review. *See* 20 C.F.R. § 404.981.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as less than a preponderance but "more than a mere scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan,* 895 F.2d at 1022. The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). The Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III. ALJ'S DETERMINATION

To qualify for benefits, the claimant must establish that he is disabled within the meaning of the Social Security Act ("SSA"). *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir.1986) (internal citations omitted). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse,* 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2020.

2. Plaintiff has not engaged in substantial gainful activity since August 9, 2017, the alleged onset date. 20 C.F.R. § 404.1571 *et seq*.

3. Plaintiff has the following severe impairments: degeneration and spondylosis at L4-5; degenerative arthritis of the bilateral knees; spondylosis of the thoracic spine; osteoarthritis; hypertension; and obesity. 20 C.F.R. § 404.1520(c).

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; 20 C.F.R. § 404.1520(d), 404.1525 and 4041526.

5. Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with sitting, or standing or walking six hours each in an eight-hour workday, except she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and must avoid concentrated exposure (no more than frequent) to hazards such as dangerous moving machinery and unprotected heights.

6. Plaintiff is capable of performing past relevant work as a cleaner/housekeeping, as general performed. This work does not require the performance of work-related activities precluded by Plaintiff's RFC. 20 C.F.R. § 404.1565.

7. Plaintiff has not been under a disability, as defined in the Social Security Act from August 9, 2017, through the date of the ALJ's decision. 20 C.F.R. § 404.1529(f).

## IV. DISCUSSION

Plaintiff advances two arguments in support of his request to reverse the ALJ's decision, which will be addressed within the framework of the five-step analysis. First, Plaintiff avers that remand is required because the ALJ failed to follow a proper legal standard by neglecting to assess Plaintiff's RFC on a function-by-function basis. (R. Doc. 17-2 at 1). Plaintiff further argues that the ALJ committed reversible error by basing the RFC on irrelevant evidence while ignoring highly relevant medical evidence. Essentially, Plaintiff argues that the ALJ should have afforded more weight to the records from Orthopedic Surgeon, Dr. Jack Loupe, and less weight to the records from Plaintiff's primary care physician, Dr. Jimmie Varnado. (R. Doc. 17-2 at

5

10).² In her next assignment of error, Plaintiff contends that the ALJ improperly rejected the opinion of Plaintiff's treating sources. (R. Doc. 17-2 at 2).

### A.    The ALJ did not fail to conduct a function-by-function assessment

Plaintiff first contends that the ALJ failed to complete a function-by-function assessment by refusing to express any limitations as to how long Plaintiff could stand or walk at one time. (R. Doc. 17-2 at 7). Plaintiff contends that it is not enough for the ALJ to state that Plaintiff is capable of walking, standing, and sitting for six hours in an eight-hour day. According to Plaintiff the ALJ should have found that Plaintiff is limited to sedentary work, which precludes her from performing past relevant work pursuant to Rule 201.14 of the Medical Vocational Guidelines. Rule 201.14 provides that "individuals closely approaching advanced age (50-54) with a High School education and prw which was not sedentary and did not provide for transferrable skills to sedentary employment" are disabled. (R. Doc. 17-2 at 2).

The RFC assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's *ability to do work-related activities.*" *Jeansonne v. Paul*, __ Fed. Appx. __, 2021 WL 1373965 (5th Cir. April 12, 2021) (emphasis added). The "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 86-8p (emphasis in original). RFC involves both exertional and non-exertional factors. *Id.* The exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. *Id.* …" *Id.* at 7. The RFC assessment must include a resolution of any inconsistencies in the evidence.

Plaintiff does not point to any authority (regulation, caselaw, or otherwise) that requires the ALJ to express exertional limitations by stating the number of minutes that a Plaintiff could

---

² This argument is essentially the same as Plaintiff's second assignment of error. Indeed, Plaintiff acknowledges that the central issue is whether the ALJ can "ignore the exam findings of a treating specialist and rely instead on the treatment records of a primary care physician…for visits wholly unrelated to the alleged disability." (R. Doc. 22 at 1). The Court will, therefore, address these arguments together.

stand or walk at one time. Conversely, when assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a *regular and continuing basis.* SSR. 96-8p. A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Id.* Additionally, the Social Security regulations express the limitations of light work in the same terms as expressed by the ALJ. SSR 83-10 provides that "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."

Accordingly, it is appropriate for the ALJ to express Plaintiff's limitations in terms of the *total* or approximate number of hours that she can stand or walk in an eight-hour workday. The ALJ is not required to piecemeal Plaintiff's limitations into shorter time frames that would not accurately represent her ability to walk or stand on a regular and continuing basis. The ALJ properly rejected the plaintiff's position and the Court does so again here.

### B. The ALJ did not commit reversible error by improperly rejecting the opinions of Plaintiff's treating physicians

Plaintiff makes two related objections to the ALJ's consideration of her medical records. First, Plaintiff argues that the ALJ should have accorded more weight to the evidence from her orthopedic specialist, Dr. Loupe, and less weight to the evidence from her primary care physician Dr. Varnado. Second, Plaintiff argues that the ALJ misrepresented evidence that revealed abnormal physical examinations and relied on "irrelevant evidence" from treatment unrelated to Plaintiff's alleged disability. (Tr. 17-2 at 12). Plaintiff suggests that the more relevant and controlling evidence is the medical records from Dr. Loupe dated April 11, 2017 (Tr. 242-245) and May 15, 2018 (Tr. 282), as well as opinions of limitations from Dr. Loupe (Tr. 294) and Dr. Varndao. (Tr. 317). According to Plaintiff, these records fully support ambulatory and weightbearing limits. (R. Doc. 17-2 at 9).

As Defendant point out, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)…including those from" the claimant's "medical sources." 20 C.F.R. 404.1520C(a). Instead, under the revised framework for claims, such as Plaintiff's, filed after March 17, 2017, the ALJ will consider the following factors to determine the persuasiveness of a medical opinion: (1) supportability, (2) consistency, (3) relationship with claimant, (4) length of the treatment relationship, (5) frequency of examinations, (6) purpose of the treatment relationship, (7) extent of treatment relationship, (8) examining relationship, and (9) specialization. 20 C.F.R. 404.1520c(c)(1)-(c)(5). The most important factors are supportability and consistency. 20 C.F.R. 404.1520c(a).

Here, the ALJ found the opinion of Dr. Loupe to be unpersuasive because it lacked objective support, and the gaps in Plaintiff's visit to Dr. Loupe caused "inconsistency with the longitudinal record." (Tr. 23; R. Doc. 21 at 12). The Court agrees.

Records of Plaintiff's April 11, 2017, show that all of Plaintiff's ligaments are stable, and there is no evidence of pain in Plaintiff's knees with stress. (Tr. 243). Additionally, the orthopedic examination of Plaintiff's knees did not reveal any "swelling or effusion," and Plaintiff displayed full range of motion in both knees. (Tr. 244). Dr. Loupe further explained that, although Plaintiff walked a little bit unsteadily, she showed enough strength to do it. (Tr. 244). During the visit, Plaintiff expressed that it was difficult to stand up after sitting for a prolonged period, but the pain eases once she is "up for a little while moving around." (Tr. 245). Plaintiff even worked at Burger King during the time of visit, which required her to be "on her feet all day, three days a week." (Tr. 245). "She also clean[ed] houses two days a week and work[ed] eight to ten hours a day." (Tr. 245). Despite this information, Dr. Loupe recommended that Plaintiff to cease "house cleaning, bending, stooping, and lifting in general." (R. Doc. 17-2 at 4; Tr. 242)

8

Plaintiff's follow-up to the April 17, 2017, did not occur until four months later (on August 9, 2017). (Tr. 281). The treatment records from the follow-up shows that Plaintiff's laboratory work was within normal limits, and Plaintiff "did not show much pain expression at all." (Tr. 283). Further, Plaintiff did not seem interested in attending physical therapy when told that it was needed to obtain a back brace. (Tr. 283).

Nine months later, on May 15, 2018, Plaintiff attended another follow-up visit with Dr. Loupe. (Tr. 281). At this visit, Dr. Loupe noted that the examination of Plaintiff's "knees show no definite effusion," and her "ligaments are stable." (Tr. 281).

Despite the above records, Dr. Loupe opined that Plaintiff is not "capable of any employment other than maybe part time sedentary work where she can sit and get up and stand frequently during the day." (Tr. 282). Her further stated that Plaintiff should be limited to standing and/or walking for no more than twenty minutes at one time. (Tr. 294).

The Court agrees that substantial evidence supports the ALJ's conclusion that Dr. Loupe's opinion is not persuasive. The evidence contained in the treatment records—particularly, Plaintiff's lack of pain, swelling, and effusion in her knees; the stability of her ligaments; and her disinterest in therapy—is inconsistent with Dr. Loupe's opinions.

Dr. Varnado's opinion that Plaintiff should be limited to walking and/or standing no more than five minutes at one time fares no better. (Tr. 317). Unlike Plaintiff's visits with Dr, Loupe, Plaintiff visited Dr. Varnado on a consistent basis from February 2017 until January 2019. During this time, she visited Dr. Varnado on at least thirteen separate occasions for a variety of reasons, including a bacterial infection, medication refills, and follow-ups on her osteoarthritis (which Plaintiff claims causes pain all over her body). (*See e.g.,* Tr. 250, 254, 295, and 301). Out of the thirteen visits, only three treatment records indicate any type of ambulatory problems. Particularly, Plaintiff's September 26, 2017, record shows (1) an irregular gait and (2) that

9

Plaintiff was ambulating on the balls of her feet due to pain. (Tr. 254). Next, on October 17, 2017, during a visit for a bacterial infection, Dr. Varnado noted that Plaintiff was ambulating on the balls of her feet due to heel pain. (Tr. 250-52). At each visit after that (including a follow-up visit on Plaintiff's osteoarthritis), Plaintiff showed no difficulty walking, a normal gait and station, and normal tone and motor strength. (Tr. 299, 300, 303, 305, 307, 309, 311, 313, 315). It was not until January 7, 2019 (one year and three months after the October 17, 2017, visit), that Dr. Varnado noted that Plaintiff exhibited a waddling gait and station. (Tr. 297).

The numerous notations of no difficulty walking, normal gait and station, and normal tone and motor strength exceedingly conflicts with Dr. Varnado's recommended walking and standing limitations.

Moreover, Plaintiff's own statements conflict with each other and her treating physicians' opinions. During the hearing before the ALJ, Plaintiff testified that she could only walk for five or ten minutes before having to sit. (Tr. 48). However, in her function report, Plaintiff noted she does house cleaning, laundry, and makes her bed. (Tr. 195). Plaintiff also does her own grocery shopping, which takes her about thirty minutes to do, and goes out for meals. (Tr. 195-196).

Although the ALJ ultimately declined to accept the entirety of his conclusion, the state agency medical consultant found the plaintiff's physical impairments to be non-severe and inconsistent with the plaintiff's physical allegations. Based on the objective evidence, as well as the inconsistency in Plaintiff's statements and the treating physicians' opinions, the ALJ found that Plaintiff's impairments are not as limiting as alleged. The Court agrees and concludes that based on the objective medical evidence and the claimant's activities of daily living, substantial evidence supports the ALJ's decision that Plaintiff can sit, stand, or walk for six hours in an eight-hour day.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the Motion for Summary Judgment (R. Doc. 17) be **DENIED**, the decision of the Commissioner be **AFFIRMED,** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on January 25, 2022.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**